UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>MARSHALL PAYNE,<br>Defendant. | )<br>)<br>) Case No. 13-cr-174<br>)<br>) Judge Sharon Johnson Coleman<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

Defendant Marshall Payne, a convicted felon, is charged with possessing two loaded TEC-9 millimeter semi-automatic handguns, in violation of 18 U.S.C. §922(g). Defendant moves to suppress evidence and statements made during his detention and arrest, asserting officers had no arrest or search warrant and lacked probable cause to arrest Defendant or search his car. On May 27, 2014, this Court held an evidentiary hearing and, for the following reasons, the motion is now respectfully denied.

**Background**

During the latter half of 2012, the Drug Enforcement Administration and the Chicago Police Department allegedly conducted an investigation into various individuals' drug trafficking activities in and around the Chicago area. As part of the investigation, law enforcement obtained court-authorized wire-taps, surveillance and covert seizures. Prior to and on November 26, 2012, law enforcement allegedly intercepted communications between Dwayne Payne (on Target Phones 8 and 11) and his brother, Defendant Marshall Payne.

At the evidentiary hearing, Chicago Police Officer John Dolan testified that he listened to intercepted calls on November 26 between Dwayne (on Target Phone 11) and Defendant (using the phone number ending in 7154[1]). Dolan determined that Defendant was headed to the corner of Central Park Avenue and Division Street to meet his brother and would have guns concealed under children's costumes in the back of his car.

---

[1] The government contends that Defendant used two phone numbers to communicate with Dwayne Payne during their months-long investigation, including numbers ending in 3828 and 7154. Defendant is the subscriber for the number ending in 7154. Dolan testified that he did not confirm Defendant's voice-identification until after he interrogated Defendant on November 26. However, Dolan testified that, prior to November 26, officers intercepted phone calls between Dwayne and phone numbers ending in 3828 and 7154 wherein Dwayne referred to Defendant as "bro" and "Uncle Junior," and said that he learned from "Mommy" that Defendant had purchased a Chrysler and therefore believed Defendant to be the user of phone numbers ending in 3828 and 7154.

1

Dolan and other surveillance officers allegedly proceeded to the intersection where Dolan then observed Defendant in and around a Chrysler 300 parked on Central Park Avenue. Dolan also saw Defendant reach toward the back of the vehicle and relayed this information to the other officers. When Dolan approached Defendant on foot after these observations, Defendant began running to a nearby CVS Drugstore and allegedly locked his car with a keyfob. Dolan pursued Defendant, and saw him drop and then throw his keys on to the CVS roof. Defendant was apprehended and handcuffed inside the CVS. According to Dolan, Defendant spontaneously admitted that he had two guns in his car and gave verbal consent to search his car.

Chicago Police Officer Edward Zablocki testified that he also observed Defendant standing near a Chrysler 300 at the intersection of Central Park Avenue and Division Street. Zablocki ran the license plates and found that the vehicle was registered to Defendant. After circling the block, Zablocki saw Defendant run from his car to the CVS, heard the car horn honk and saw the car lights flash as Defendant locked the doors. Based on the intercepted calls, Zablocki believed there were guns in the vehicle and decided to stay with the vehicle until Defendant was apprehended. Zablocki testified that he could see costumes in the backseat of the vehicle but was instructed not to recover the guns or search the car on site. Additionally, Zablocki said he was told that Defendant admitted to having two guns in the car and consented to a search of his vehicle.

Once Defendant's keys were recovered from the CVS roof, another officer unlocked the vehicle and Zablocki looked under the costumes to find a TEC-9 millimeter semi-automatic handgun. Another officer drove the vehicle to the police station where a second TEC-9 millimeter semi-automatic handgun was recovered from the trunk.

**Analysis**

The Fourth Amendment generally requires law enforcement to secure a warrant, particularly describing the place to be searched and the person or things to be seized, before conducting a search. U.S. Const. amend. IV; *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S. Ct. 2013, 2014, 144 L. Ed. 2d 442 (1999). Indeed, a warrantless search is per se unreasonable under the Fourth Amendment subject to a few well-established exceptions. *Arizona v. Gant*, 556 U.S. 332 (2009). Where an individual's home or vehicle is searched without a warrant, the government must show by a preponderance of the evidence that the search fell within one of the

recognized exceptions to the warrant requirement. *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000).

Defendant seeks to suppress the evidence recovered from his Chrysler 300, as well as several statements allegedly made to police when he was detained and arrested on November 26, 2012. Defendant argues that officers lacked arrest and search warrants, lacked probable cause to arrest Defendant and search his car, and therefore exceeded the limited scope of the inquiry permitted by *Terry v. Ohio*, 392 U.S. 1 (1968). Defendant also disputes that he consented to officers searching him or his car or that he gave permission to officers to take his car into custody. Defendant maintains that no weapons or contraband were plainly visible in the car and claims that he was never read his *Miranda* rights. Additionally, Defendant asserts that his identity was unknown to surveillance officers until after his detention and arrest, and any allegations that he was a participant in any intercepted phone calls are mere speculation.

The government contends that while officers lacked a warrant, they had probable cause to arrest Defendant based on the wiretap interceptions and surveillance, and had probable cause to search Defendant's vehicle under the automobile exception to the warrant requirement. The Court agrees. "Probable cause exists when the facts and circumstances within the officer's knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense." *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014) (quotations and citations omitted). "Determining whether probable cause exists involves a practical, common-sense decision whether, given all the circumstances set forth...there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Hines*, 449 F.3d 808, 814 (7th Cir. 2006) (quotations and citations omitted).

Dolan testified that he listened to several intercepted phone calls on November 26 and determined from the substance of the calls that Dwayne Payne was planning to meet Defendant, in the vicinity of Central Park Avenue and Division Street. Based on these interceptions, officers further expected that Defendant would have at least one gun in his car, which was hidden under costumes in the back of the car. Acting on this information, Dolan and other officers then proceeded to the intersection and there observed Defendant in and around his car parked on Central Park Avenue. Both Dolan and Zablocki testified that Defendant fled on foot from his car to the CVS, while doing so, locked his car with a keyfob. Thus, given the totality of the

circumstances, including the wiretap interceptions and surveillance on November 26, officers had probable cause that Defendant was in possession of a firearm. The fact that Defendant ran only reinforced the probable cause to arrest that the officers already had. *United States v. Williams*, 285 F. App'x 284, 287 (7th Cir. 2008) (citing *Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000)).

Moreover, an officer need not have a warrant to search a vehicle pursuant to the automobile exception to the warrant requirement "when there is probable cause to believe that the search will uncover contraband or evidence of a crime." *United States v. Hines*, 449 F.3d 808, 814 (7th Cir. 2006) (quotations and citations omitted); *see also Maryland v. Dyson* 527 U.S. 465, 467 (1999) (automobile exception does not require exigent circumstances). Based on the intercepted phone calls and officers' surveillance at the scene, officers not only had probable cause to arrest Defendant, but had probable cause to believe that weapons were concealed within the vehicle. Indeed, Zablocki testified that he observed costumes in plain view through the window of the car consistent with information learned via the wiretap interception. Where officers had the requisite probable cause to arrest Defendant, the subsequent search of his vehicle falls squarely within the automobile exception. Further, while neither party disputes that Defendant threw his keys on the roof of the CVS, the Court notes that in discarding his keys into the public domain, Defendant may have forfeited any privacy interest he had in his vehicle or the contents therein, and in fact his actions indicate an intent to distance himself from the car.

Finally, Defendant seeks to suppress statements allegedly made to officers during his detention and arrest, and further disputes that he was read his *Miranda* rights. Dolan testified that Defendant spontaneously admitted that he had two guns in his car, consented to search his car and asked that officers drive his car to another location before searching it prior to being read his *Miranda* rights. Dolan further testified he read Defendant his *Miranda* rights out of another officer's FOP book in the police vehicle and again at the police station. The Court acknowledges that it strains credulity that a convicted felon would spontaneously admit to being in possession of a firearm, however, not all convicted felons who find themselves in a compromising situation would necessarily act in a uniform or predictable manner. Indeed, the Court finds Dolan's unrebutted testimony, which was subject to thorough cross-examination, is sufficiently credible to withstand a motion to suppress. Therefore, at this stage, Defendant's motion to suppress statements made to officers is denied.

**Conclusion**

      For the foregoing reasons, Defendant's motion to suppress is denied.

IT IS SO ORDERED.

_____
Date: June 19, 2014

                                                        _____
                                                              Sharon Johnson Coleman
                                                           United States District Judge